Alta B. HALL, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare of the United States of America, Defendant.

No. C-216-G-62.

United States District Court
M. D. North Carolina,
Greensboro Division.

June 19, 1963.

Frazier & Frazier and H. Vernon Hart, Greensboro, N. C., for plaintiff.

William H. Murdock, U. S. Atty., and Roy G. Hall, Jr., Asst. U. S. Atty., Greenboro, N. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

This action was instituted by the plaintiff pursuant to § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education, and Welfare, denying the plaintiff disability insurance benefits and the establishment of a period of disability. The final decision of the Secretary consists of a decision rendered by Hearing Examiner Ben D. Worcester on June 22, 1962, which became the final decision when the Appeals Council denied plaintiff's request for a review. Plaintiff has moved for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the grounds that there are no genuine issues as to any material facts and that she is entitled to a judgment as a matter of law. Defendant has cross-moved for the same relief.

Plaintiff is now 52 years of age. She has a seventh-grade education and has worked in a cotton mill off and on since the age of thirteen, always as a winder. She claims that she became unable to work on October 1, 1958, when she was 47 years of age, because of a back injury sustained while working at Pickett Cotton Mills, High Point, North Carolina. She alleges that when she tried to return to work at the mill in early 1959 she was in such pain she had to give up working after about one week. It is conceded that the plaintiff has met the special earning requirements of the Social Security Act.

The only evidence introduced before the Hearing Examiner was several medical reports and the testimony of the plaintiff. Plaintiff was not represented

by counsel. If the evidence of the plaintiff is to be believed, there can be no question but that she has been physically unable to engage in any substantial gainful activity since the date of her injury on October 1, 1958. The medical reports are less conclusive.

Dr. Robert C. Johnston stated that he had treated the plaintiff between October 30, 1958, and March 6, 1959, with symptoms of low back pain. He found multiple tender areas in the lumbosacral region of her back. X-rays of plaintiff's spine on February 20, 1959, showed slight hypertrophic arthritis. Dr. Johnston was of the opinion that plaintiff had hypertrophic arthritis of the spine and a chronic low back sprain with an acute episode on October 1, 1958. He said her condition was static.

During the latter part of 1959, plaintiff was examined at the Bowman Gray School of Medicine, Winston-Salem, North Carolina. Plaintiff's symptoms were found to be subjective, as no objective evidence was found of either nerve root compression or disc protusion. However, on October 6, 1959, Dr. Frederick Bergen, Assistant Resident Neurosurgeon, reported that plaintiff had a possible herniated disc at Region L4, L5. A myelogram performed at Bowman Gray School of Medicine was found to be normal.

A report from the records of the Miller Clinic, Charlotte, North Carolina, dated March 8, 1960, shows that plaintiff was admitted to Memorial Hospital in Charlotte in early 1960 for a period of conservative treatment. She received traction and physical therapy daily. She did not show a great deal of improvement and a lumbar myelogram was performed on March 28, 1960 which showed no defects. The physician was of the opinion that plaintiff was suffering from a chronic sprain of her lumbosacral spine superimposed upon a degenerative disc. He did not believe that it was operative at that time. Plaintiff was dismissed from the hospital to be followed as an out-patient. She was later seen on April 30, 1960, when her back was still giving her considerable pain. On September 3, 1960, she was back in the office with a good bit of muscle spasm.

On April 1, 1961, Dr. Richard H. Ames, a neurosurgeon, reported that he had examined the plaintiff and was well satisfied that she had a chronic recurrent disc at the fourth interspace on the left side. He also reported that he was satisfied that surgery was the only form of definitive treatment that could be offered plaintiff.

On June 18, 1962, Dr. W. Gordon Smith stated that the plaintiff had been under his treatment since August, 1961, suffering from generalized rheumatoid arthritis, which condition had become worse. It was his opinion that the plaintiff would be permanently troubled with this condition, which would render her "unable to do a days work." Again, on August 2, 1962, Dr. Smith stated that as the plaintiff advances in her age her heart condition will become worse, and that the rheumatoid arthritis which had "involved all large joints of the body along with the spine is also progressive disease."

The Hearing Examiner entertained no doubt but that claimant suffered some pain. However, it was his feeling that she was able to do light work. It was concluded that the plaintiff had not established that her impairments, either singularly or in combination, were of such severity as to preclude her from engaging in any substantial gainful activity.

There is substantial evidence in the record tending to prove plaintiff has suffered from great pain since the date of her injury. Two neurologists suspect a herniated disc. Only Dr. Ames suggested that the condition was remedial, but he made no positive recommendation in this regard. The plaintiff impressed the Hearing Examiner as being "an honest, truthful and sincere person." As earlier noted, if her testimony is to be believed, there can be no question concerning her inability to engage in any gainful activity whatever. The reports of Dr. Gordon Smith, which were not before the Hear-

ing Examiner, but were considered by the Appeals Council, indicate that plaintiff's condition is progressive and that she is unable to perform any work.

Plaintiff has limited education and has never performed any public work other than that of a winder in a cotton mill. The record clearly establishes that she is no longer capable of doing that type of work. The Secretary does not suggest what employment opportunities are available to a person of plaintiff's age, educational attainments, work experience, and mental and physical capabilities. The plaintiff testified that if anyone could find her a job she would be willing to take any kind of work. She further stated that her suffering had been so severe she had not been able to do her cooking and housework.

■ On the basis of the entire record, including the objective medical evidence, and the substantial subjective evidence of incapacity, all of which is uncontradicted, and considering the work history, education, age and experience of the plaintiff, the Court is unable to sustain the finding that the plaintiff is capable of engaging in substantial gainful activity. Whether her condition is remedial was apparently not considered by the Hearing Examiner. Under these circumstances, it is desirable that a final decision on the merits of plaintiff's claim be deferred until there has been an opportunity to present further evidence concerning the nature, extent and duration of plaintiff's disability, and the employment opportunities available to her. If it is concluded that the plaintiff is capable of engaging in some type of gainful activity, it should not be too much trouble for the Secretary to point out the employment opportunities available to her. This disposition is sanctioned by Kerner v. Flemming, 2 Cir., 283 F.2d 916 (1960).

Accordingly, an order will be entered remanding the case to the Secretary for further proceedings, and denying both motions for summary judgment without prejudice.